AO 91 (Rev. 11/82)

## CRIMINAL COMPLAINT

**COPY**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>JORGE RODRIGUEZ SORIANO | DOCKET NO. |
| | MAGISTRATE'S CASE NO.<br>**16-24210** |

Complaint for violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE ALKA SAGAR | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>November 27, 2016 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

### [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about November 27, 2016, in Los Angeles County, within the Central District of California, defendant JORGE RODRIGUEZ SORIANO knowingly possessed with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Codes Sections 841(a)(1) and (b)(1)(C).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

**(See attached affidavit which is incorporated as part of this Complaint)**

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: **N/A**

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**JASON MALIK** |
|---|---|
| | OFFICIAL TITLE<br>Task Force Officer – ATF |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>ALKA SAGAR | DATE<br>December 9, 2016 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Damaris M. Diaz x0302      REC: Detention



## AFFIDAVIT

I, Jason Malik, being duly sworn, declare and state as
follows:

### I.   PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal
complaint and arrest warrant for JORGE RODRIGUEZ SORIANO
("SORIANO"), for a violation of Title 21, United States Code,
Section 841(b)(1)(C) (possession with intent to distribute
methamphetamine).

2.    The facts in this affidavit are based upon my personal
observations, my training and experience, and information
obtained from various law enforcement personnel and witnesses.
This affidavit is intended to show merely that there is
sufficient probable cause for the requested complaint and arrest
warrant and does not purport to set forth all my knowledge of,
or investigation into, this matter.  Unless specifically
indicated otherwise, all conversations and statements described
in this affidavit are related in substance and in part only.

### II. BACKGROUND FOR ATF TFO JASON MALIK

3.    I am a Deputized Task Force Officer, ("TFO"), with the
United States Department of Justice, Bureau of Alcohol, Tobacco,
Firearms and Explosives ("ATF"), currently assigned to Los
Angeles Field Division, Group II/Los Angeles Police Department,
("LAPD") Metropolitan Division Task Force.  I have been a peace
officer with the LAPD for over 18 years.  My mission within this
Task Force includes, but is not limited to, reducing gang-
related and violent crime, assisting in the investigation,

locating and apprehending of persons who have committed crimes within the City of Los Angeles and developing and utilizing proactive methods to monitor and prevent criminal activity within our communities. Additionally, I work in conjunction with several specialized units and geographical detectives including Gang and Narcotics, Narcotics Abatement Unit, 77th Detectives, Southeast Detectives, Newton Detectives, Operations-South Bureau Criminal Gang Homicide Division, California Department of Corrections, Los Angeles County Probation, Los Angeles Sheriff's Department, and Homeland Security Investigations. Before my current assignment, I was assigned to the Central Division Gang Enforcement Detail, Central Division's Career Criminal Detail, and Operations-Central Bureau Gang Task Force.

4.   I have received seven months of basic law enforcement training while attending the Los Angeles Police Academy. I have also received several specialized training blocks to include, the recognition, use, possession, packaging and sales of controlled substances. Additionally, I attended and successfully completed a 40-hour narcotics training program, which focused on the recognition, use, possession, packaging, and sales of controlled substances. During my time as a peace officer, I have conducted surveillance at known narcotics, gang, and illegal firearm sales locations and observed the actions and methods used by criminal street offenders in the course of selling and buying contraband. I have also conducted and participated in hundreds of firearm related investigations.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

5.    On November 27, 2016, LAPD Officers Michael Larson and David Bunch conducted a traffic stop of a grey Chevrolet truck with paper license plates, traveling eastbound on Wilshire Boulevard toward Alvarado Street in Los Angeles, California. The truck was driven by SORIANO.  During the traffic stop, Officer Larson saw an open can of beer and what appeared to be a large knife within arm's reach of SORIANO.

6.    During a search of the truck, Officers recovered: the beer can, which was three-quarters full and cold to the touch; a sheathed, 18-inch fixed blade hunting knife; a clear plastic baggie containing methamphetamine weighing 7.35 gross grams; a small digital scale; and a fully-loaded Arm Fratelli Tan Foglio, model BTA90, blue steel semi-automatic 9mm handgun.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

7.    The facts supporting this affidavit are based on my conversations with LAPD Officers Michael Larson and David Bunch, my knowledge, training, and experience, and my review of the incident report.

**A.    SORIANO's Possession of Narcotics and a Firearm**

8.    Based on my review of a November 27, 2016 report prepared by LAPD Officers Larson and Bunch, and my conversations with both officers, I know the following:

a.    On or about November 27, 2016, at approximately 10:15 p.m., Officer Larson and Officer Bunch were patrolling an area in the Rampart Division that was known to them to have

significant narcotics and firearms activity, along with gang-related violence.

b.    As Officers Larson and Bunch were traveling eastbound on Wilshire Boulevard at Alvarado Street they both saw a grey Chevrolet truck with a paper dealer plate on the rear of the truck.  Officers Larson and Bunch had recently arrested an individual who had stolen a car and attempted to conceal the identity of the car by covering the rear plate with a paper dealer plate, and therefore were suspicious of the Chevrolet truck's paper plate.  Officers Larson and Bunch conducted a traffic stop on the Chevrolet truck for a violation of California vehicle code section 5200(a) (display of plates).

c.    Officer Bunch approached the driver's side of the grey Chevrolet truck and spoke to SORIANO, who was alone, and explained the reason for the traffic stop.  As Officer Bunch was speaking to SORIANO, Officer Larson saw the grip of what appeared to be a large hunting knife sticking up between the front driver and passenger seats, as well as an open 24-ounce can of Negro Modelo beer standing upright on the passenger floorboard.  Officer Bunch told SORIANO to get out of truck and detained SORIANO pending further investigation.  Officer Larson recovered a sheathed, 18-inch fixed blade hunting knife and secured it.  Officer Larson also recovered the open container of Negro Modelo beer which was cold to the touch and three-quarters full.

d.    Officer Larson asked SORIANO if the truck belonged to him.  SORIANO said it did.  Officer Larson saw

4

numerous tools and tool bags in plain view inside the truck and
in the truck bed, and asked SORIANO what he did for a living.
SORIANO said he was a home audio/video installer.  While
Officers Larson and Bunch were speaking to SORIANO, SORIANO
noticed the can of beer in Officer Larson's hand.  SORIANO said
that the beer can did not belong to him, but in fact belonged to
a friend he had dropped off earlier, who had left the beer can
in SORIANO's truck.

     e.    Officer Larson asked SORIANO if everything else
in the truck belonged to him.  SORIANO said everything else in
the truck was his, including the tools, the tool bags, and the
ladder which was in the truck bed.  Officer Larson continued to
visually inspect the back seat of the truck using his flashlight
and saw, in plain sight, a clear plastic baggie of what he
suspected was crystal methamphetamine inside one of the open
tool bags in the back seat.  Officer Larson recovered the tool
bag and the baggie and inspected the baggie further, and it
indeed appeared to contain crystal methamphetamine.

     f.    Officer Larson showed SORIANO the red tool bag.
SORIANO said, "yes, that is mine."  Officer Larson held up the
baggie of methamphetamine and SORIANO said that the baggie was
not his.  Officer Larson continued to search the tool bag.
Inside the same red tool bag, Officer Larson found a balled up
grey shirt wrapped around an Arm Fratelli Tan Foglio, model
BTA90, blue steel semi-automatic 9mm handgun, bearing serial
number G07092, loaded with 10 rounds of ammunition.  When
Officer Larson held up the handgun, SORIANO said he had no

knowledge of the gun.  As Officer Larson continued to search SORIANO's truck, Officer Larson found a small hand held digital scale from inside the driver's side door.

g.   SORIANO said that he had just dropped off a coworker only moments earlier and his coworker must have left the beer on the floorboard.  SORIANO also said this coworker must have left the baggie of crystal methamphetamine and the loaded 9mm handgun in the red tool bag without SORIANO noticing. SORIANO was not able to tell Officer Larson or Bunch his friend's name or the street he lived on.

h.   Officer Larson then began to read SORIANO his Miranda rights.  SORIANO, who to this point appeared to have no trouble communicating with the officers in English, said that he did not understand English.  Officer Larson called for a Spanish-speaking officer to respond to the location.  Officer Enrique Guerrero arrived and read SORIANO his Miranda rights in Spanish.

i.   Officers Larson and Bunch submitted the suspected methamphetamine to the LAPD Forensic Science Division for testing.  The substance was confirmed to be methamphetamine, with a net weight of 6.86 grams.  Based on the officers' training and experience and the discovery of the methamphetamine, digital scale, and gun, they determined that SORIANO possessed the methamphetamine with intent to distribute, and possessed the gun in furtherance of drug trafficking.

## V.   CONCLUSION

9.    Based on the above, I submit that there is probable cause to believe that, on or about November 27, 2016, SORIANO committed a violation of Title 21, United States Code, Section 841(b)(1)(C) (possession with intent to distribute methamphetamine).

/s/
_____
Jason Malik, Task Force Ofcr
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Subscribed to and sworn before me
this 9th day of December 2016.

**ALKA SAGAR**
_____
HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE